IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DEREK J. MUNJAK                                                                                    PLAINTIFF

v.                                          Civil No. 11-3131

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                            DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Derek Munjak, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

The plaintiff filed his applications for DIB and SSI on December 1, 2008, alleging an onset date of December 1, 2002, due to personality disorder, attention deficit hyperactivity disorder, and heart problems. Tr. 111-113, 114-120, 153-154, 179, 182, 184, 194, 197. His applications were denied initially and on reconsideration. Tr. 59-62.

An administrative hearing was held on April 27, 2010. Tr. 28-58. Plaintiff was present and represented by counsel. At this time, Plaintiff was 37 years of age and possessed the equivalent of a high school education. Tr. 32-33, 142, 169. He had past relevant work ("PRW") experience as a painter, carpenter, oil change technician, and exhibit laborer. Tr. 34-38, 145-152, 165, 203.

On August 6, 2010, the Administrative Law Judge ("ALJ") concluded that Plaintiff's personality disorder and ischemic cardiomyopathy status post a myocardial infarction and implantation of an automatic implantable cardioventer-defibrilator constituted a severe impairment. Tr. 13. She determined that Plaintiff had become disabled on December 1, 2008, but that his impairments did not meet or

medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CRF 404.2520(d), 404.1525 and 404.1526) prior to this date.  Prior to December 1, 2008, the ALJ found Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: "the claimant can perform work in which there is incidental interaction with others consistent with the work performed."  Tr. 14.  With the assistance of a vocational expert, the ALJ then found that plaintiff could perform work as an assembler, poultry worker, and machine tenderer.  Tr. 16-17.

On September 10, 2010, the ALJ amended her decision to indicate that she was denying Plaintiff's Title II claim, as he was not disabled on or prior to December 31, 2006, his date last insured. However, the ALJ clarified that she was granting his application for Title XVI benefits as of his filing date, December 2, 2008.  Tr. 592-593.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on October 25, 2011.  Tr. 1-3.  Subsequently, plaintiff filed this action.  Doc. # 1.  This case is before the undersigned for report and recommendation.  Both parties have filed appeal briefs, and the case is now ready for decision.  Doc. # 8, 10.

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the

2

case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)©. A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *See Barnhart v. Walton*, 535 U. S. 212, 219-220 (2002).

A.     **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion**:

Plaintiff contends that the ALJ erred in concluding that he was not disabled because: 1) the ALJ erred in determining Plaintiff's RFC as her own findings acknowledge his inability to work due to his personality disorder, 2) the ALJ failed to find Plaintiff's ADHD a severe impairment, and 3) the ALJ's decision is not supported by substantial evidence.

At the onset, we note that Plaintiff's appeal encompasses only his application for Title II benefits. ECF No. 8.  Therefore, the only medical records to be dealt with will be those dated on or before December 31, 2006, Plaintiff's date last insured.[1]

**A.    Non-severe impairments:**

Step two of the evaluation states that a claimant is not disabled if his impairments are not "severe." *Simmons,* 264 F.3d at 754; 20 C.F.R. § 416.920(a)(4).  An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *id.* at 158, 107 S.Ct. 2287 (O'Connor, J., concurring); 20 C.F.R. § 404.1521(a).  If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir.2007).  It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir.2000).  Severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen,* 870 F.2d 1392, 1395 (8th Cir.1989), but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. See, e.g., Page, 484 F.3d at 1043-44; *Dixon v. Barnhart,* 353 F.3d 602, 605 (8th Cir.2003); *Simmons,* 264 F.3d at 755; *Gwathney v. Chater,* 104 F.3d 1043.

---

[1] In order to qualify for DIB, a claimant must show that he or she became disabled during the period in which he or she met the DIB requirements. *Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001). A claimant who becomes disabled after the expiration of her insured status is not entitled to DIB. *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998).

4

Plaintiff contends that the ALJ erred in finding that his ADHD was not a severe impairment. However, a review of the record indicates that Plaintiff was diagnosed with ADHD on only one occasion. Tr. 224-228. Although he was prescribed Strattera in February 2003, we can discern no further evidence that Plaintiff was prescribed medication to treat ADHD or was otherwise treated for this impairment. Tr. 224-228. *See Trenary v. Bowen*, 898F.2d 1361, 1364 (8th Cir. 1990) (holding that a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis). In fact, when he was next hospitalized for a mental impairment, in April 2003, Plaintiff was diagnosed with bipolar disorder and treated accordingly. Tr. 530-566. He even told the doctor that he had been under treatment for bipolar disorder (no mention of ADHD), but had discontinued his medications. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility). Limited records from Plaintiff's treating psychiatrist, Dr. Fatima Ali, dated through November 2003 also indicate that Plaintiff was prescribed only Klonopin and Depakote, neither of which treat ADHD. Tr. 229-230. And, no further mental health treatment was sought until 2008. Thus, the only evidence to support Plaintiff's contention that his ADHD was severe and limited his ability to perform work-related activities is his own testimony. *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (failure to seek medical assistance for alleged physical and mental impairments contradicts subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits).

On an adult function report, Plaintiff also reported the ability to perform some repairs, read, make model cars, watch movies, visit with family, follow written directions well, and follow oral directions fairly well. Tr. 155-162. He also managed to find a girlfriend and sustain a romantic relationship with her. We find that the ability to perform these activities is inconsistent with complaints of disabling attention and concentration deficits. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001) (holding that inconsistencies between subjective complaints of pain and daily living patterns

5

diminish credibility). Accordingly, it seems clear to the undersigned that Plaintiff's history of minimal treatment for ADHD coupled with his reported abilities supports the ALJ's conclusion that his ADHD was not a severe impairment.

We note that the ALJ did consider the symptoms associated with Plaintiff's ADHD when determining Plaintiff's RFC. Although she may not have used the term "ADHD", she specifically considered Plaintiff's alleged difficulty dealing with people, how he walked away from stressful situations, and his lack of focus. Tr. 14-15. So, to the extent she failed to cite "ADHD" as a severe impairment, we find the omission to be harmless error. *Graig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (finding that the ALJ is not required to discuss all evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered).

**B.    RFC:**

Plaintiff contends that substantial evidence does not support the ALJ's RFC assessment in this case. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the

workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

First, Plaintiff asserts that the ALJ erred in concluding that he was not disabled prior to December 31, 2006, because she acknowledged that his personality disorder was disabling. The language in question reads as follows:

> the undersigned finds that the evidence as a whole documents that the claimant's personality disorder was severe prior to his alleged onset date of December 1, 2002, as evidenced most prominently by his inability to hold a job, his inability to get along with supervisors and his strained interpersonal relationships.

Tr. 15. While the ALJ did recognize Plaintiff's personality disorder and acknowledged his testimony regarding its ramifications, she also noted that Plaintiff did not seek out consistent treatment for his alleged mental impairments and failed to follow-up with treatment as recommended. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments). The evidence reveals that Plaintiff underwent a psychiatric assessment in February 2003, at which time he was diagnosed with ADHD, rule out bipolar disorder, and assessed with a global assessment of functioning score of 60. Tr. 224. He was then treated on an outpatient basis by Dr. Ali until his hospitalization in April 2003 for an alleged suicide attempt. Tr. 229-230, 530-566. Plaintiff reported that he was drinking heavily with friends and took drugs of an unknown origin. Tr. 544. At this time, he indicated that he had been under treatment for bipolar disorder, but had stopped taking his medication. Plaintiff responded well to treatment and was discharged three days later with a prescription for bipolar medication. Tr. 530. It was recommended that he follow up with the Community Counseling Center, but Plaintiff failed to do so. Tr. 530. It does appear that he returned to Dr. Ali's care, at least through November 2003, receiving prescriptions for Klonopin (an anti-anxiety drug) and Depakote (used to treat mania). However, there are no further mental health treatment records until 2008, well after Plaintiff's date last insured. *See*

7

*Gowell v. Apfel*, 242 F.3d 793, 798 (8th Cir. 2001) (lack of evidence of ongoing treatment for mental health impairments weighs against a claim of disability).

Accordingly, the ALJ concluded that Plaintiff could perform a full range of work at all exertional levels but with the following nonexertional limitations: "the claimant can perform work in which there is incidental interaction with others consistent with the work performed." Plaintiff's second argument is that the RFC does not accurately reflect his limitations. Specifically, he reasons that keeping interpersonal interaction incidental to the work performed does not limit or define the frequency of said interaction, which he believes is key to compliance with this restriction. However, given that Plaintiff failed to seek out consistent treatment and/or medication for his mental impairments and failed to follow through with the course of treatment recommended by his mental health providers, we find that this restriction adequately reflects the degree of limitation imposed by Plaintiff's impairments. The evidence indicates only that Plaintiff has reported difficulties getting along with authority figures. Tr. 160-161. He has reported no difficulties dealing with family, and has indicated that he currently has a girlfriend. Thus, it seems clear that he would require a job that minimizes his contact with others. As this is precisely what the ALJ laid out, we can find no error with the RFC determination.

### C. Substantial Evidence:

Lastly, Plaintiff contends that substantial evidence does not support the ALJ's conclusion that Plaintiff was not disabled on or before December 31, 2006, his date last insured. "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

We find that the ALJ's credibility determination was well reasoned and based upon the record before her, taking into account Plaintiff's subjective complaints; his daily activities; the duration, frequency, and intensity of his pain; the lack of evidence concerning the dosage, effectiveness, and side effects of medications; the absence of precipitating and aggravating factors; and, his functional

restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). A review of the evidence also reveals that the ALJ correctly considered Plaintiff's medical records and his subjective complaints in determining his RFC.

The evidence reveals that Plaintiff received minimal and inconsistent treatment for his mental impairments prior to his date last insured. During this time period, he was also treated for left shoulder muscle pain and spasm; a sprained right ankle; lumbar sprain and a forehead contusion; and, back and right hand pain. Tr. 268-273, 274-276, 299-303, 304-308. However, he did not seek out consistent treatment for any of these impairments. And, x-rays of his hand and spine were unremarkable. Tr. 269-272. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). In fact, there is nothing in the record to even indicate that Plaintiff had an ongoing prescription for pain medication or muscle relaxers.

Plaintiff was also treated for migraine headaches on approximately four occasions in 2005. Tr. 277-278, 279-284, 287-292, 293-296. Each time, he was administered medication, which it appears he responded well to, and was released home. CT scans of his head showed no acute intracranial process and an MRI was unable to delineate the cause for his headaches. Tr. 278, 285-286, 287-292, 293-296. In November 2005, Plaintiff was scheduled an appointment with a neurologist, but there is no evidence that he kept this appointment. Tr. 278. *See* 20 C.F.R. § 404.1530 (1990) (To receive Social Security disability benefits, a claimant must follow treatment prescribed by his physician if such treatment will restore his ability to work.).

Further, the record indicates that Plaintiff continued to work between his alleged onset date and his date last insured. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did. We will consider all of the medical and vocational evidence in your file to determine whether or not you have the ability to engage in substantial gainful activity."). Although he claimed to have hardly worked, Plaintiff

9

testified that he worked as a painter/repairman for his apartment complex from January 1, 2002, until December 2, 2008, in exchange for his rent which totaled approximately $400 per month. Tr. 164. The medical evidence also documented his work abilities. In November 2005, Plaintiff was treated in the emergency room after blacking out and falling off of a ladder. Tr. 274-275. Then, in June 2006, he sought treatment after falling off a 12-foot drop, while at work. Tr. 272-273. And, in 2008, he advised Ozark Counseling Services that he was working as a painter. Although his earnings did not qualify as substantial gainful activity, we do find this level of activity coupled with the abilities acknowledged in his adult function report to be inconsistent with his contention of total disability. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th cir. 2001) (holding that ALJ's decision to discredit plaintiff's testimony will be upheld if he gives a good reason for doing so).

Based on the RFC assessed by the ALJ, a vocational expert ("VE") testified that an individual possessing the abilities outlined in the RFC could still perform work as a small products assembler, poultry worker, and machine tenderer. Tr. 54-56. We find that the ALJ's hypothetical question included all of Plaintiff's limitations found to exist by the ALJ and set forth in the her description of Plaintiff's RFC. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). Based on our previous conclusion that the ALJ's RFC determination is supported by substantial evidence, we hold that the hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits. *Id.*

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus recommends that the decision be affirmed, and Plaintiff's Complaint be dismissed with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal**

10

**questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 29th day of October 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

11

**AO72A**
**(Rev. 8/82)**